IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON DIVISION

| | |
|---|---|
| Cody Queen, *individually and on behalf of all other similarly situated individuals*,<br><br>Plaintiff,<br><br>v.<br><br>Zefco, Inc., William Zearley, and Lanette Zearley,<br><br>Defendants. | Civil Action No.: _____<br><br><br>**COMPLAINT**<br>(Jury Trial Requested) |

Plaintiff Cody Queen ("Plaintiff"), individually and on behalf of all other similarly situated individuals, complaining of the acts of Defendants Zefco, Inc. ("Defendant Zefco"), William Zearley ("Defendant William Zearley"), and Lanette Zealey ("Defendant Lanette Zearley") (collectively, "Defendants"), respectfully would allege and show unto this Honorable Court the following:

### NATURE OF THE ACTION

1. Plaintiff brings this action individually and as a class action under the Internal Revenue Code, 26 U.S.C. § 7434 ("IRC"), to recover damages for Defendants' willful filing of fraudulent information returns with respect to his and other similarly situated individuals' wages.

2. The Internal Revenue Service ("IRS") will be notified of this Complaint, and of the IRC violations alleged herein, in accordance with 26 U.S.C. § 7434(d), which provides, "Any person bringing an action under subsection (a) shall provide a copy of the complaint to the Internal Revenue Service upon the filing of such complaint."

### PARTIES, JURISDICTION, AND VENUE

3. Plaintiff is a citizen and resident of Anderson County, South Carolina, and a former employee of Defendants.

1

4. Defendant Zefco is a corporation organized and existing pursuant to the laws of South Carolina, with its principal place of business in Anderson County, South Carolina.

5. Upon information and belief, Defendant William Zearley is the sole owner and shareholder of Defendant Zefco and a citizen and resident of Anderson County, South Carolina.

6. Upon information and belief, Defendant Lanette Zearley is an officer and agent of Defendant Zefco and a citizen and resident of Anderson County, South Carolina.

7. Plaintiff brings this action individually and as an opt-out class action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of all individuals employed by Defendant Zefco for any period ranging from six years preceding the filing of this Complaint to present, on whose behalf Defendants willfully filed a fraudulent return with the IRS.

8. Upon information and belief, this action satisfies the requirements of Rule 23(a), Fed. R. Civ. P., as alleged in the following particulars:

    A. The proposed Plaintiff class is so numerous and geographically diverse that joinder of all individual members in this action is impracticable;

    B. There are questions of law and/or fact common to all members of the proposed Plaintiff class;

    C. The claims of Plaintiff, the representative of the proposed Plaintiff class, are typical of the claims of the proposed Plaintiff class; and

    D. Plaintiff, the representative of the proposed Plaintiff class, will fairly and adequately protect the interests of the class.

9. In addition, upon information and belief, this action satisfies one or more of the requirements of Rule 23(b), Fed. R. Civ. P., because the questions of law and/or fact common to the members of the proposed Plaintiff class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action is based on federal law.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because at least one Defendant is located within this judicial district and division and because the unlawful acts and practices giving rise to Plaintiff's claims occurred here.

## FACTS

12. Defendant Zefco is a construction company that specializes in industrial foundations and flooring.

13. Defendant Zefco participates in large-scale and small-scale construction projects throughout South Carolina and across the United States.

14. Defendant William Zearley is the founder, owner, and president of Defendant Zefco.

15. Defendant William Zearley manages the day-to-day operations of Defendant Zefco.

16. Defendant William Zearley established, implemented, and enforced Defendant Zefco's illegal overtime and tax fraud schemes.

17. Defendant Lanette Zearley is a vice president and serves as office manager of Defendant Zefco.

18. Defendant Lanette Zearley supervised Plaintiff and other similarly situated individuals on behalf of Defendant Zefco.

19. Defendants William Zearley and Lanette Zearley enforced and implemented Defendant Zefco's pay policies, including Defendant Zefco's illegal overtime and tax fraud schemes, and especially with regard to deductions for federal income taxes, Social Security and Medicare (hereinafter "FICA") and unemployment taxes (hereinafter "FUTA").

20. Defendants employed Plaintiff, a twenty-nine-year-old male, from March 2015 to February 2019 as an account manager, while Plaintiff worked toward an accounting degree at Clemson University.

21. Plaintiff was a non-exempt, hourly employee.

22. Defendants paid Plaintiff $16 to $20 per hour through a weekly paycheck.

23. Plaintiff was responsible for payroll and bookkeeping.

24. Jennifer Haynes ("Haynes") was responsible for preparing all federal tax forms, including W-2s and 1099s.

25. Plaintiff was supervised by Defendant Lanette Zearley and Haynes while he worked for Defendant Zefco, with the exception of 2018, when he was supervised only by Haynes.

26. Defendants required Plaintiff and similarly situated employees to complete a "probationary period" upon hire by Defendants.

27. During the probationary period, Defendants willfully and intentionally did not deduct federal income taxes from Plaintiff's and similarly situated employees' paychecks.

28. Defendants willfully and intentionally did not report the income that Plaintiff and similarly situated employees earned during their probationary periods on Plaintiff's and similarly situated employees' W2s.

29. Accordingly, all W2s issued by Defendants to Plaintiff and similarly situated employees during their first year of employment with Defendants were fraudulent in that they did not report the wages Plaintiff and similarly situated employees earned during their probationary period.

30. Upon information and belief, if an employee's probationary period began during one year and ended during the following year, the W2s for both years were fraudulent, as neither reported the wages the employee earned during the probationary period in either year.

31. Plaintiff's "probationary period" for Defendants lasted from March 2015 until October 2015. During this period, Plaintiff received regular income from Defendants, but no federal income, FICA, or FUTA taxes were deducted from any of Plaintiff's paychecks because Defendants did not put him on payroll until October 2015.

32. Plaintiff was paid over $10,000 between March and October 2015, when no federal income, FICA, or FUTA taxes were deducted from his pay.

33. Defendant Lanette Zearley signed checks for Defendants, including Plaintiff's own checks, during the period of time between March 2015 and October 2015 and informed Plaintiff that her husband, Defendant William Zearley, determined when employees, including Plaintiff, would be put on payroll and have federal income, FICA, and FUTA deducted from their pay.

34. Defendant Lanette Zearley told Plaintiff between March 2015 and October 2015 that he would not be put on the payroll until Defendant William Zearley determined and approved Plaintiff's addition to the payroll.

35. In 2015 and early 2016, Defendant Lanette Zearley specifically instructed Plaintiff to prepare paychecks and stamp her name to paychecks issued to employees and contractors employed by Defendant Zefco,

36. Defendant Lanette Zearley further specifically instructed Plaintiff, in early 2016 when he started writing payroll checks for Defendants' employees, not to deduct federal income, FICA, or FUTA taxes from any employees' or contractors' paychecks for bonuses and overtime per diem.

37. Plaintiff did exactly as he was instructed by Defendant Lanette Zearley in 2016 and 2017 when overtime per diem was paid to employees and contractors by stamping her name and not deducting any federal income, FICA or FUTA taxes from his pay and all other employees and contractors paid by Defendants.

5

38. Defendants paid Plaintiff and similarly situated employees "overtime per diem" for hours worked in excess of forty hours within a workweek, meaning Plaintiff and similarly situated employees received an untaxed lump sum payment based on the estimated hours of overtime worked in a week.

39. Defendants began paying overtime per diem in 2008 and continued to pay overtime per diem throughout Plaintiff's employment. (**Exhibit 1**, Amounts of overtime per diem paid, 2008- 2017.)

40. Defendant William Zearley determined the amount of overtime per diem based on the job assigned to each employee and contractor working for Defendant during each pay period and the amount of overtime per diem paid to each employee and contractor from 2008 and throughout the time that Plaintiff was employed by Defendants. (*See* **Ex. 1**.)

41. Although the amount of overtime per diem varied for each employee and contractor, depending on the number of hours worked by each employee and contractor in each pay period, overtime per diem was listed on the employees' and contractors' actual paychecks from 2016 through the end of Plaintiff's employment with Defendants.

42. Defendants did not deduct federal income, FICA, or FUTA taxes from the "overtime per diem" for Plaintiff or any similarly situated employee during the course of Plaintiff's employment.

43. Plaintiff is aware of at least forty-five employees and contractors from 2016 through 2019, who received overtime per diem that was not subject to federal income, FICA, and FUTA taxes. (**Ex. 1**.)

44. Plaintiff further is aware that, between 2016 and 2019, over $1,300,000 was paid out to employees and contractors of Defendant Zefco for overtime per diem without any federal income, FICA, or FUTA taxes being deducted. (**Ex. 1**.)

45. Plaintiff carried out Defendant Lanette Zearley's instructions concerning not deducting federal income, FICA, or FUTA taxes from paychecks for employees and contractors of Defendants, including himself, from 2016 through the end of his employment in 2019.

46. Plaintiff carried out Defendant Lanette Zearley's instructions concerning not deducting federal income, FICA, or FUTA taxes for overtime per diem from paychecks in 2018, even when Defendants were being audited by the Internal Revenue Service for not paying federal income taxes due and owing.

47. Defendants William Zearley and Lanette Zearley knew exactly what Plaintiff was doing, at Defendant Lanette Zearley's direction, when overtime per diem was paid because the cancelled checks for the employees and contractors were sent to Defendants each month by their bank in Anderson, South Carolina, and because Defendant Lanette Zearley was not deducting federal income, FICA, or FUTA taxes for overtime per diem prior to the time that Plaintiff was writing paychecks for Defendants. (*See* **Exhibit 2**, Representative copies of paychecks and check register showing no deductions for overtime per diem, 2016-2017.)

48. Overtime per diem would appear on the paychecks, and no federal income, FICA, or FUTA taxes would be deducted from the gross pay for each employee and contractor paid overtime per diem. (**Ex. 2**.)

49. In 2016 and 2017, Plaintiff also prepared bonus checks that were paid to employees and contractors of Defendants.

50. Plaintiff again was instructed by Defendant Lanette Zearley, in late 2015 and early 2016, not to deduct any federal income, FICA, or FUTA taxes from any of the bonus checks to himself or any other employee and contractor.

51. Defendant Lanette Zearley did not deduct any federal income, FICA, or FUTA taxes from any of the bonus checks issued to employees and contractors in late 2015.

52. Defendants issued bonus checks at least twice a year in 2016 and 2017, in the summer and later in the year, around Thanksgiving or Christmas, including to Plaintiff.

53. Plaintiff is aware of at least forty-eight employees and contractors who received the bonus checks without federal income, FICA, or FUTA taxes being deducted. (**Exhibit 3**, Employee bonus list.)

54. Plaintiff received a bonus check in November 2017 without federal income taxes, FICA, or FUTA taxes being taken out. (**Exhibit 4**, Bonus check for $2,000, dated November 22, 2017.)

55. Plaintiff stamped the bonus checks with Defendant Lanette Zearley's name and did not deduct any federal income, FICA, or FUTA taxes from any bonus checks in either 2016 or 2017.

56. At no time during 2016 and 2017 were any federal income, FICA, or FUTA taxes deducted from any amounts paid as bonuses to any employees, including Plaintiff, and contractors working for Defendants during those years.

57. Defendant William Zearley determined the amounts of bonuses paid in late 2015, 2016, and 2017 for each employee and contractor working for Defendants.

58. Defendants William Zearley and Lanette Zearley knew, at all times, that no taxes were being deducted from any bonus checks in late 2015, 2016, and 2017 based on the facts already alleged, including bank statements and the fact that Defendant Lanette Zearley previously was not deducting taxes from paychecks issued for bonuses and specifically instructed Plaintiff to continue this practice.

59. Based on the paychecks issued by Plaintiff alone in 2016 and 2017, Defendants paid out over $100,000 dollars in bonus checks, without deducting any taxes.

60. Defendants failed to report these separate and distinct bonus checks as wages to the IRS on W2s or 1099s for Plaintiff and other similarly situated employees.

61. Defendants paid Plaintiff a "severance" of $3,200 on February 11, 2019, without deducting taxes and failed to list the severance payment on Plaintiff's 2019 W2 or issue a 1099 to Plaintiff. (**Exhibit 5**, Severance check for $3,200, dated February 11, 2019.)

62. Defendants, with knowledge, willfully falsified wage records for Plaintiff and all other employees in submission of W2s to the IRS from 2015 to the present and continuing.

63. Defendants underreported Plaintiff's income to the Internal Revenue Service on his W-2 for 2015, 2016, 2017, 2018, and 2019.

64. Plaintiff would estimate that Defendants underreported his income by the following amounts: over $10,000 in 2015; $1,569, not including all bonuses, in 2016; $5,235, not including all bonuses, in 2017; between $2,000 and $3,000 in 2018; and, $3,200 in 2019.

65. Accordingly, Defendants did not pay Social Security taxes on the amounts listed in Paragraph 64, and Plaintiff will suffer both an immediate and long-term out-of-pocket loss of Social Security benefits on the amounts listed in Paragraph 64, as a result.

66. Plaintiff immediately will lose any and all retirement benefits based on the amounts listed in Paragraph 64, even if he pays all of the Social Security taxes that he is responsible for paying between 2015 and 2019, because Defendants are responsible for paying one-half of all Social Security taxes.

67. As a result of Defendants' underreporting of Plaintiff's income from 2015 through 2019, Plaintiff will lose Social Security regular retirement benefits when he is eligible for retirement due to Defendants falsely reporting his wages to the Internal Revenue Service, in failing to report Plaintiff's probationary period, overtime per diem, bonus, and severance pay.

68. As a result of Defendants underreporting Plaintiff's income from 2015 through 2019, Plaintiff will receive a lower regular retirement benefit based on his current earnings record.

69. Plaintiff and all others employed by Defendants, including those listed in Exhibits 1 and 2, face interest and penalties at any time from the Internal Revenue Service, as a result of Defendants falsely reporting employees' income on W-2s from 2015 through 2019.

70. All other employees listed in Exhibits 1 and 2 also will suffer an immediate out-of-pocket loss of Social Security benefits, even if they pay all relevant taxes, because Defendants

are responsible for paying one-half of the Social Security taxes not reported on W-2s from 2014 to the present for overtime per diem, bonuses, their probationary periods, and any severance pay.

71. None of the employees listed in Exhibits 1 and 2, including Plaintiff, earned more than the maximum amount of income on an annual basis from 2014 to the present that would not require Defendants to pay at least one-half of the Social Security taxes for each year.

72. Defendants, with knowledge, willfully falsified wage records for the similarly situated employees misclassified as independent contractors by failing to issue W2s for tax purposes from 2013 to the present and continuing.

73. Defendants failed to issue any tax form for similarly situated employees misclassified as independent contractors in at least 2013 and 2014.

74. Defendants have failed and refused to deduct any taxes for Plaintiff and other employees hired after 2015 during their probationary period from 2015 through 2018.

75. Defendants William Zearley and Lanette Zearley concealed the fact that, from 2016 to 2018, invoices and payments sent to Defendant Zefco for services performed routinely were deposited into Defendant William Zearley's personal account and not reported to the IRS.

76. During an IRS audit of Defendant Zefco in 2018, Defendants William Zearley and Lanette Zearley successfully concealed from the IRS several millions of dollars of invoices and payments due to Defendant Zefco that routinely were deposited in Defendant William Zearley's personal account from 2016 and 2018.

77. Defendants William Zearley and Lanette Zearley also concealed the following from the IRS during its 2018 audit of Defendant Zefco: that taxes were not withheld from employees' compensation during their initial probationary periods; that taxes were not withheld from employees' overtime compensation; and that taxes were not withheld from employees' bonuses, from at least 2015 through, and including, 2018.

78. During the 2018 audit, Defendants William Zearley and Lanette Zearley ordered Plaintiff to falsify records in furtherance of their scheme to conceal information from the IRS.

79. After the IRS concluded its audit in 2018, Defendants reclassified, as employees, certain individuals previously misclassified as independent contractors but continued to pay overtime per diem without deducting taxes.

80. Defendants William Zearley and Lanette Zearley engaged in the unlawful scheme referenced in the preceding paragraphs to personally enrich themselves at the expense of the United States of America and to the detriment of Plaintiff and all similarly situated individuals.

81. Each Defendant was involved in filing all fraudulent tax returns in the instant case by submitting tax forms, such as W-2s for Plaintiff and other employees, to the Internal Revenue Service with income that knowingly was false on the returns for the years referenced above, including by individually and together not reporting overtime per diem, probationary period wages, and bonuses on the W2s.

82. Each Defendant was involved in filing all fraudulent tax returns in the instant case by submitting 1099s on behalf of workers to the Internal Revenue Service with income that knowingly was false on the returns referenced above, individually and together, by specifically not reporting overtime per diem and/or bonuses on the 1099s.

83. In addition to the monetary damages alleged above, Plaintiff has suffered significant emotional damages, including, but not limited to, debilitating stress and anxiety that necessitated use of prescription medications both during and after Plaintiff's employment by Defendants, as a result of Defendants' illegal actions.

84. Plaintiff has been unable to receive his CARES Act economic impact payment (coronavirus stimulus check) or tax refund for the 2019 tax year because Defendants did not properly set forth Plaintiff's W-2 income for his 2019 federal income tax return, in failing to

include Plaintiff's severance payment, further compounding Plaintiff's emotional pain and suffering caused by Defendant's illegal actions.

### FOR A FIRST CAUSE OF ACTION
**Against All Defendants**
(Violation of the Internal Revenue Code—Willful Fraudulent Tax Filings)
(Individual and Class Action)

85. The foregoing allegations not inconsistent herewith are incorporated herein as if set forth verbatim.

86. Defendant Zefco is an "employer" within the meaning of the IRC, 26 U.S.C. §§ 3401(d) and 3121(h), because it is a corporation organized under the laws of South Carolina and had control over the payment of Plaintiff's and other similarly situated employees' wages.

87. Defendants William Zearley and Lanette Zearley are "employers" within the meaning of the IRC, 26 U.S.C. §§ 3401(d) and 3121(h), because they had control over Plaintiff's and the members of the Plaintiff class' wages.

88. Defendants had a legal obligation to submit accurate tax statements for each Plaintiff to the IRS.

89. Defendants willfully and knowingly filed false W2 forms that misstated wages earned with one or more of the following inaccuracies:

    A. During their probationary periods, Defendants paid Plaintiff and the members of the Plaintiff class without tax withholdings and did not report this income to the IRS;

    B. Defendants paid Plaintiff and the members of the Plaintiff class overtime for hours worked in excess of forty hours in a workweek and did not report overtime wages to the IRS;

    C. Defendants routinely paid Plaintiff and the members of the Plaintiff class with "bonus checks" without any tax withholdings and did not report these wages to the IRS;

    D.    Defendants improperly issued 1099s instead of W2s for similarly situated employees who were intentionally misclassified as independent contractors; and/or,

    E.    Defendants paid Plaintiff and members of the Plaintiff class "severance" without tax withholdings and did not report these wages to the IRS.

90. In summary, Defendants knowingly filed false W2s with the IRS concerning Plaintiff's and the members of the Plaintiff class' employment wages and misstated the amount paid in fact, and the amount owed in fact, to the IRS.

91. Defendant William Zearley knowingly caused the filing of false W2s through the creation and/or approval of Defendant Zefco's pay, overtime, and tax policies.

92. Defendant William Zearley knowingly failed to prevent and/or correct false W2s from being filed with the IRS despite his duty to do so as president and owner of Zefco.

93. Defendant Lanette Zearley knowingly caused the filing of false W2s through the creation and/or approval of Defendant Zefco's pay, overtime, and tax policies.

94. Defendant Lanette Zearley knowingly failed to prevent and/or correct false W2s from being filed with the IRS despite her duty to do so as vice president and office manager of Defendant Zefco.

95. Plaintiff and the members of the Plaintiff class sue for redress under 26 U.S.C. § 7434.

96. Plaintiff and the members of the Plaintiff class are entitled to costs attributable to resolving deficiencies, the statutory penalty of $5,000 per violation for each Plaintiff, damages resulting from the additional tax debt and additional time and expenses associated with any necessary correction, and reasonable attorneys' fees and costs incurred in prosecuting this action.

**WHEREFORE**, having fully Complained of Defendants, Plaintiffs demand a jury trial and respectfully request that the Court enter judgment for the following relief:

A. An order authorizing the sending of appropriate notice to current and former employees of Defendants who are potential members of the class action under the Internal Revenue Code;

B. An award against Defendants of the amount of actual damages sustained in lost Social Security benefits and interest and penalties or $5,000 per violation, whichever is greater, to Plaintiffs and members of the IRC class;

C. An award against Defendants, in an amount to be determined by a jury, for the emotional distress suffered by Plaintiff;

D. Pre-judgment and post-judgment interest;

E. Equitable and injunctive relief;

F. Attorneys' fees and costs; and

G. Such further relief as the Court deems just and proper.

Respectfully submitted,

s/ Grant Burnette LeFever
M. Malissa Burnette (Fed. ID 1616)
Grant Burnette LeFever (Fed. ID 12943)
BURNETTE SHUTT & McDANIEL, PA
912 Lady Street (29201)
P.O. Box 1929
Columbia, South Carolina 29202
T: 803.904.7911
F: 803.904.7910
MBurnette@BurnetteShutt.Law
GLeFever@BurnetteShutt.Law

Richard Neuworth (Fed. ID 01052)
LEBAU & NEUWORTH, LLC
606 Baltimore Avenue – Suite 201
Baltimore, Maryland 21204
T: 410.296.3030
F: 410.296.8660
RN@joblaws.net
*Pro Hac Vice Motion to be Filed

**ATTORNEYS FOR PLAINTIFF**

Columbia, South Carolina
July 16, 2020